IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | ) ) ) |
| PLAINTIFF, | ) Case No. ) |
| v. | ) ) |
| JONATHAN LOGAN and YOLANDA LOGAN, | ) ) ) |
| DEFENDANTS. | ) ) |

# COMPLAINT

Plaintiff United States Fire Insurance Company ("USFIC"), by and through its undersigned counsel, alleges the following for its Complaint against Defendants Jonathan Logan ("Mr. Logan") and Yolanda Logan ("Ms. Logan," and collectively with Mr. Logan, the "Defendants"):

## I.     PARTIES

1.     USFIC is a corporation formed under the laws of the State of Delaware with its principal place of business located in Morristown, New Jersey, which is the location from which USFIC's high level officers direct, control, and coordinate USFIC's corporate activities. Thus, USFIC is a citizen of the State of Delaware and the State of New Jersey for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). USFIC is also duly qualified and authorized to transact business within the State of Tennessee.

2.     Upon information and belief, Mr. Logan is a citizen of the State of Mississippi and can be served with process at 12633 Cotton Row Drive, Olive Branch, Mississippi 38654.

3. Upon information and belief, Ms. Logan is a citizen of the State of Mississippi and can be served with process at 12633 Cotton Row Drive, Olive Branch, Mississippi 38654.

## II. JURISDICTION AND VENUE

4. This Court possesses original jurisdiction over the claims asserted in USFIC's Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter is a controversy between citizens of different states.

5. This Court possesses the authority to declare the respective rights and other legal relations of USFIC and the Defendants as requested herein pursuant to 28 U.S.C. § 2201(a).

6. This Court possesses the authority to award the injunctive relief requested herein pursuant to Rule 65 of the Federal Rules of Civil Procedure.

7. Venue is proper in the United States District Court for the Western District of Tennessee, Western Division pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 123(c)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Tennessee, Western Division. In addition, the Defendants have consented to jurisdiction and venue in this Court by virtue of their execution of the Indemnity Agreement (as defined below).

## III. FACTUAL ALLEGATIONS

### The General Indemnity Agreement

8. USFIC is in the business of issuing surety bonds on behalf of certain principals in relation to their contracts for the performance of construction work.

9. Castle Black, Inc. (the "Principal") is a company engaged in the construction business and located in the State of Tennessee. The Principal has regularly performed projects in, among other places, the State of Tennessee and the State of Mississippi.

10. As a condition of and in consideration for USFIC's issuance of surety bonds on behalf of the Principal, Mr. Logan and Ms. Logan executed a General Indemnity Agreement dated August 31, 2020 (the "Indemnity Agreement"), in favor of USFIC. A true and accurate copy of the Indemnity Agreement is attached as Exhibit 1.

11. The Indemnity Agreement defines "Indemnitors" to include the Defendants and the Principal.

12. By executing the Indemnity Agreement, each of the Indemnitors jointly and severally covenanted, promised, and agreed to exonerate, defend, indemnify, and hold harmless USFIC from and against any and all "Loss." More specifically, Paragraph 5 of the Indemnity Agreement provides:

> Indemnification and Hold Harmless. The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, defend, indemnify and hold harmless [USFIC] from and against any and all Loss, irrespective of whether [USFIC] has made any payment under any of its Bonds or whether the Indemnitors may have assumed, or offered to assume, the defense of [USFIC] upon any claim. [USFIC] shall be entitled to immediate reimbursement for any and all Loss incurred by it in good faith and under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such payments. An itemized, sworn statement of Loss by an employee of [USFIC], or other evidence of payment shall be *prima facie* evidence of the propriety, amount and existence of Indemnitors' liability. Indemnitors shall pay to [USFIC] interest on all disbursements made by [USFIC] at the maximum rate permitted by law, calculated from the date of each such disbursement. The Indemnitors will, at the request of [USFIC], procure the discharge of [USFIC] from any Bond and all liability by reason thereof.

(Ex. 1, ¶ 5).

13. The Indemnity Agreement defines "Loss" to mean:

[A]ll demands, liabilities, losses, costs, damages and expenses of any kind or nature, including legal fees and expenses, court costs, technical, engineering, accounting, consultant, expert witness and/or other professional fees and expenses, including the cost of in-house professionals, which [USFIC] incurs, or to which it may be exposed, in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of: (i) [USFIC's] having executed any Bond or any other instrument or any Modification thereof; (ii) any investigation by [USFIC] in connection with any Bond or Contract; (iii) [USFIC's] prosecuting or defending any action in connection with any Bond; (iv) [USFIC's] obtaining or attempting to obtain the release of any Bond; (v) [USFIC's] recovering or attempting to recover Property . . . in connection with any Bond or this Agreement; (vi) Indemnitors' failure to perform or comply with any promise, covenant, or condition of this Agreement; (vii) [USFIC's] enforcing by litigation or otherwise any of the provisions of this Agreement; and (viii) all interest accruing thereon at the maximum legal rate. Loss shall also include any and all amounts sufficient to discharge any Claim made against [USFIC] on any Bond and shall further include any premiums due on any Bond issued by [USFIC] on behalf of the Principal.

(Ex. 1, ¶ 2).

14. The Indemnity Agreement defines "Bond" to mean:

[A]ny and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which [USFIC] has executed or procured, or for which [USFIC] has an obligation as a result of an asset purchase, acquisition, merger or like transaction, issued for or on behalf of any one or more of Indemnitors (without regard to whether any such Indemnitors signed this Agreement), their respective present or future direct or indirect parent companies, subsidiaries and affiliates and all of their respective successors and assigns, whether issued in paper form or electronically. For the purpose of this Agreement, "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions.

(Ex. 1, ¶ 2).

15. The Indemnity Agreement defines "Claim" to mean:

[A]ny claim, notice of default, notice of termination, demand for payment, demand for meeting, action, proceeding, suit, judgment, or any form of notice, claim or demand received by [USFIC] in connection with any Bond or Contract.

(Ex. 1, ¶ 2).

16. The Indemnity Agreement defines "Contract" to mean:

[A]ny agreement of, or undertaking by, any Indemnitor, the performance of which is bonded by [USFIC] and all Modifications thereof, whether made before or after the date of this Agreement, and all agreements between Indemnitors and [USFIC]. This shall also include, without limitation, any contract or obligation, the performance of which is guaranteed or covered either in whole or in part under a Bond.

(Ex. 1, ¶ 2).

17. Paragraph 6 of the Indemnity Agreement states:

Settlement of Claims. [USFIC] shall have the right to adjust, settle or compromise any Claim unless the Indemnitors: (i) request, in writing, [USFIC] to litigate, defend, or appeal such Claim; and (ii) deposit with [USFIC], at the time of such request, cash or collateral satisfactory to [USFIC] in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of [USFIC], and to the extent that such litigation, defense, or appeal is not otherwise prohibited by law. [USFIC's] decision to adjust, settle or compromise any Claim shall be final and binding upon the Indemnitors. [USFIC] shall at all times have the right, but not the obligation, to retain the counsel and experts of its choice to defend itself from any Claim or to prosecute an action to preserve [USFIC's] rights with respect to collateral security, Contract funds, trust funds, liens on any bonded project or this Agreement, and the cost of retaining such counsel and experts shall fall within the Indemnitors' obligation to indemnify, exonerate and hold [USFIC] harmless.

(Ex. 1, ¶ 6).

18. Paragraph 7 of the Indemnity Agreement states:

Collateral Security. Immediately upon demand by [USFIC], the Indemnitors shall deposit with [USFIC] a sum of money, as collateral security, in an amount [USFIC], in its sole and absolute discretion, deems necessary at the time of said demand to protect [USFIC] from actual or anticipated Loss. Demand may be made as soon as: (i) the assertion of any Claim against [USFIC]; or (ii) [USIFC] determines that liability exists under any Bond; or (iii) [USFIC] has a reasonable basis to believe that it may incur or sustain liability or Loss, or (iv) any diversion of funds relating to any Contract by any Indemnitor in violation of this [Indemnity] Agreement or applicable law, or (v) [USFIC] deems itself insecure, whether or not [USFIC] has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any Claim in whole or in part. [USFIC] shall be entitled to apply any collateral security held by it under this [Indemnity] Agreement

or any collateral security agreement between it and any of the Indemnitors to the satisfaction of or in reimbursement of [USFIC] as a result of its satisfaction of any claim and to the direct payment of or reimbursement of itself of any Loss. [USFIC] shall have no duty to invest, or provide interest on, any collateral security deposited by the Indemnitors. The Indemnitors acknowledge and agree that their failure to immediately deposit with [USFIC] any sums demanded under this section shall cause irreparable harm to [USFIC] for which it has no adequate remedy at law. Indemnitors agree and shall stipulate in any legal proceeding that [USFIC] is entitled to injunctive relief for specific performance of said collateral deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary. Indemnitors further agree that any order enforcing this provision of this Agreement shall operate as a judgment, lien and encumbrance on any Property owned by the Indemnitors.

(Ex. 1, ¶ 7).

19.   Paragraph 8 of the Indemnity Agreement states:

Remedies Upon Default. Effective as of the date of this [Indemnity] Agreement or the date of any Bond, whichever is earlier, Indemnitors irrevocably assign, convey and transfer to [USFIC] all of their rights, title and interest in, or growing in any manner out of the Property, and in the event of Default, [USFIC] shall have the right, in its sole discretion, to take any or all of the following actions: (i) take possession of the work under any Contract and to complete said Contract, or cause, or consent to, the completion thereof; (ii) immediately take possession of Indemnitors' Property and utilize the Property for the completion of the work under any Contract without liability for any payment or losses arising from such use; (iii) assert or prosecute any right or claim in the name of any Indemnitor and to settle any such right or claim as [USFIC] sees fit; (iv) execute in the name of any Indemnitor, any instruments deemed necessary or desirable by [USFIC] to: (a) provide [USFIC] with title to the Property, (b) take immediate possession of the Property, including but not limited to Contract funds whether earned or unearned, (c) collect such sums as may be due Indemnitors and to endorse in the name of Indemnitors, and (d) collect on any negotiable instruments; (v) require any Obligee to withhold payment of Contract funds unless and until [Surety] consents to its release; (vi) be subrogated to all the rights, remedies, properties, funds, securities and receivables relating to Indemnitors' Contracts or contracts, and have the right to offset Loss on any Contract or Bond against proceeds, funds or payments, monies and properties that are due or may become due on any Contract or contract; and/or (vii) commence a legal proceeding to enforce any or all of the provisions of this Agreement. Further, in the event of Default, and upon demand, Indemnitors shall direct that all payments, monies, and properties that are due or may become due on any Contract be made payable to, and/or sent directly to, [USFIC] or [USFIC's]

designated agent, and shall issue whatever writing or notices as deemed necessary by [USFIC] to effectuate the default and/or termination of any Contract.

(Ex. 1, ¶ 8).

20. The Indemnity Agreement defines "Property" to mean:

Indemnitors' rights, title and interest, whether now held or hereafter acquired in, or growing in any manner out of, or in any way related to: (i) Contract or contract, bonded or non-bonded, in which any Indemnitor has an interest, including but not limited to subcontracts let; (ii) any and all sums due or which may hereafter become due under any Contract or contract, bonded or non-bonded, in which any Indemnitor has an interest and all damage claims and proceeds related thereto; (iii) all rights arising under any surety bonds or insurance policies; (iv) any and all accounts receivable, letters of credit, documents of title, bills of lading, warehouse receipts, machinery, plants, equipment, tools, materials, supplies, inventory, vehicles, hardware, software, machine tools, fixtures, office equipment, books records, designs, licenses, patents, intellectual property, as-builts, construction drawings and documents, and all electronically stored information; (v) any and all real property owned by the Indemnitors, including all fixtures, and (vi) any and all claims relating to or arising from any Contract or contract, bonded or non-bonded, in which any Indemnitor has an interest.

(Ex. 1, ¶ 2).

21. The Indemnity Agreement "Default" to include:

[T]he occurrence of any one or more of the following: (i) a declaration of Contract default and/or termination by any Obligee, (ii) any demand by an Obligee, other Bond beneficiary and/or payment bond claimant against a Bond; (iii) actual breach or abandonment of any Contract; (iv) a breach of any provision of this [Indemnity] Agreement; (v) failure to make payment of a properly due and owing bill or debt in connection with any Contract and/or this Agreement; (vi) failure to pay for any labor or materials when such payment is due; (vii) failure to deposit collateral security as required by this [Indemnity] Agreement or otherwise; (viii) failure to provide timely financial information; (ix) [USFIC]'s establishment of a reserve; (x) failure to pay premium; (xi) a dissipation or diversion of assets or Property by an Indemnitor which impairs the performance of any term or condition of this Agreement or any Contract; (xii) any proceeding which deprives an Indemnitor of the use or interferes with an Indemnitor's use of any supplies, tools, plant, machinery, equipment or materials required for the performance of any Contract; (xiii) any Indemnitor's becoming the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, or creditor assignment, or actually becoming insolvent; (xiv) any Indemnitor's dying, becoming legally incompetent, being imprisoned, being convicted of a felony, or disappearing and being unable to be

located; (xv) any representation furnished to [USFIC] by or on behalf of any Indemnitor that is materially false or misleading when made, including, without limitation, the Indemnitor's financial information; (xvi) the transfer by an Indemnitor of more than (10%) of Indemnitor's assets to another without consideration; and/or (xvii) any change in control or existence of any Indemnitor.

(Ex. 1, ¶ 2).

22. Paragraph 16 of the Indemnity Agreement states:

<u>Lawsuits</u>. The Indemnitors submit to the jurisdiction of the state and federal courts situated in New York, waiving any defenses of lack of personal jurisdiction and waiving venue arguments, including forum non conveniens, in any action brought by [USFIC] in the State of New York. [USFIC] reserves the right to bring an action in any state where an Indemnitor has substantial contacts or where a project covered by a Bond subject to this Agreement is located or where a claimant brings suit against [USFIC] on a Bond covered by this Agreement and Indemnitors agree to submit to the jurisdiction of the courts in such state. In any action by [USFIC] against the Indemnitors, or any of them, each agrees that service of process may be made on any one of them end will be effective as to all of the Indemnitors. This Agreement shall be governed by the laws of the State of New York, without regard to conflicts of laws principles. Separate suits or proceedings may be brought by [USFIC] on this Agreement as causes of action accrue.

(Ex. 1, ¶ 16).

### The Bonds and USFIC's Loss

23. In reliance upon the covenants and conditions of the Indemnity Agreement, USFIC issued surety bonds on behalf of the Principal, including: (a) Performance Bond and Payment Bond, each bearing No. 602-121034-8 (the "MDCC Bonds"), pertaining to a prime contract between the Principal and the Mississippi Bureau of Building ("MBOB") for the Mississippi Delta Community College Bookstore Project (the "MDCC Project") and (b) Performance Bond and Payment Bond, each bearing No. 602-132454-9 (the "FAA Bonds", and collectively with the MDCC Bonds, the "Bonds"), pertaining to a prime contract between the Principal and the Federal Aviation Authority for the HFAA – ARTCC AHU 1-5 Replacement Project (the "FAA Project", and collectively with the MDCC Project, the "Contracts").

24. On March 2, 2023, the Principal petitioned for bankruptcy protection under Chapter 11 Subchapter V of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Tennessee, Case No. 23-21064 (the "Bankruptcy").[1]

25. USFIC has received claims and demands on the Bonds as a result of, *inter alia*, the Bankruptcy and the declining financial of the Principal.

26. More specifically, certain of the Principal's subcontractors and/or suppliers asserted claims under the MDCC Payment Bond on account of labor and/or material purportedly furnished to the Principal in relation to the MDCC Project.

27. USFIC has, to date and pursuant and subject to its rights and obligations under the MDCC Payment Bond and the Indemnity Agreement, paid no less than $47,150 resolving claim(s) submitted on the MDCC Payment Bond. USFIC made all payments under the MDCC Payment Bond in good faith and based on the belief that it was liable for the amounts disbursed or that it was necessary or expedient to make such payments.

28. USFIC has also received an additional $168,474 in claims on the MDCC Payment Bond from the Principal's subcontractors and/or suppliers. USFIC is continuing to investigate the additional MDCC Payment Bond claims and reserves all rights in relation thereto.

29. MBOB has also alleged that the Principal is in default of its obligations in relation to the MDCC Project and has requested that USFIC arrange for completion pursuant and subject to the MDCC Performance Bond. The Principal has failed to provide and/or to execute a plan for addressing the alleged default and ensuring its completion of the MDCC Project.

---

[1] As the Principal has petitioned for protection under Chapter 11 Subchapter V of the Bankruptcy Code, nothing in this Complaint should be construed as a claim or demand against the Principal. This Complaint is filed solely to enforce USFIC's rights against the Defendants, Mr. and Ms. Logan.

30. One of the Principal's subcontractors asserted a claim on the FAA Payment Bond on account of labor and/or material purportedly furnished to the Principal in relation to the FAA Project. USFIC is continuing to investigate the additional FAA Payment Bond claims and reserves all rights in relation thereto.

31. USFIC's payments under the MDCC Payment Bond constitute Loss under the Indemnity Agreement for which the Defendants are jointly and severally liable to reimburse and indemnify USFIC.

32. Furthermore, the unresolved demands on the Bonds constitute Claims against USFIC as defined by the Indemnity Agreement, entitling USFIC to make demand on the Defendants for collateral security to protect it from actual or anticipated Loss under the Bonds.

33. USFIC has been forced to retain counsel and has incurred and continues to incur attorney's fees and related costs and expenses as a result of issuing the Bonds on behalf of the Principal and enforcing the Indemnity Agreement, all such fees, costs, and expenses constituting Loss under the Indemnity Agreement for which the Defendants are jointly and severally liable to USFIC.

## Breach of the Indemnity Agreement

34. In a letter to the Defendants dated April 21, 2023, USFIC demanded that the Defendants (i) indemnify USFIC from and against any and all Loss, including all sums paid by USFIC under the MDCC Payment Bond, and (ii) collateralize USFIC for all actual and anticipated Loss as a result of USFIC receiving claims on the Bonds. The April 21, 2023 letter is attached as <u>Exhibit 2</u>.

35. Despite demand, the Defendants have failed and refused to exonerate, reimburse, indemnify, and collateralize USFIC for all actual and anticipated Loss as required by the Indemnity Agreement.

36. The Defendants have breached the Indemnity Agreement, causing damage to USFIC for which the Defendants are jointly and severally liable.

## IV.     CLAIMS FOR RELIEF

### COUNT I – BREACH OF THE INDEMNITY AGREEMENT

37. USFIC hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

38. Under Paragraph 5 of the Indemnity Agreement, as more fully set forth therein, the Defendants are contractually obligated to exonerate, defend, indemnify, and hold harmless USFIC from and against any and all Loss.

39. Further, under Paragraph 7 of the Indemnity Agreement, as more fully set forth therein, the Defendants are contractually obligated, upon demand by USFIC, to deposit a sum of money as collateral security in an amount deemed necessary by USFIC, in its sole and absolute discretion, to protect it from actual or anticipated Loss.

40. The Indemnity Agreement defines Loss to include, *inter alia*, all demands, liabilities, losses, costs, damages, and expenses of any kind or nature, including legal fees and expenses, incurred by USFIC by reason of (a) USFIC having issued any Bonds on behalf of the Principal, (b) USFIC's investigation in relation to any Bonds or Contracts, (c) the failure of the Defendants to perform their obligations under the Indemnity Agreement, and (d) USFIC's enforcement of the Indemnity Agreement by litigation or otherwise.

41. To date, USFIC has incurred Loss and faces additional exposure to further Loss as a result of (a) having issued the Bonds on behalf of the Principal, (b) having to retain legal counsel to protect its rights and interests under the Bonds and the Indemnity Agreement, and (c) the failure of the Defendants to honor their obligations under the Indemnity Agreement.

42. Because USFIC continues to incur Loss and/or faces exposure to incurring further Loss, including fees and expenses enforcing the Indemnity Agreement, USFIC expressly reserves the right to modify and increase its demand on the Defendants.

43. Despite demand, the Defendants have failed and refused to exonerate, reimburse, indemnify, and collateralize USFIC in relation to all actual or anticipated Loss as required by the Indemnity Agreement.

44. The Defendants' failure to exonerate, reimburse, indemnify, keep indemnified, hold harmless and collateralize USFIC from and against any and all actual or anticipated Loss constitutes a material breach of the Indemnity Agreement.

45. USFIC has been damaged as a result of the Defendants' material breach of the Indemnity Agreement in an amount to be proven at trial.

46. Therefore, USFIC is entitled to the entry of judgment against the Defendants in an amount necessary to fully exonerate, reimburse, indemnify, keep indemnified, hold harmless and collateralize USFIC from and against any and all actual or anticipated Loss, which amount is greater than $75,000 and will be proven at trial.

**COUNT II – SPECIFIC PERFORMANCE OF THE INDEMNITY AGREEMENT**
**(Deposit of Collateral)**

47. USFIC hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

48.     Under Paragraph 7 of the Indemnity Agreement, as more fully set forth therein, the Defendants are contractually obligated, upon demand by USFIC, to deposit a sum of money as collateral security in an amount deemed necessary by USFIC, in its sole and absolute discretion, to protect it from actual or anticipated Loss.

49.     The Indemnity Agreement defines Loss to include, *inter alia*, all demands, liabilities, losses, costs, damages, and expenses of any kind or nature, including legal fees and expenses, incurred by USFIC by reason of (a) USFIC having issued any Bonds on behalf of the Principal, (b) USFIC's investigation in relation to any Bonds or Contracts, (c) the failure of the Defendants to perform their obligations under the Indemnity Agreement, and (d) USFIC's enforcement of the Indemnity Agreement by litigation or otherwise.

50.     As reflected in Paragraph 7 of the Indemnity Agreement, the Defendants agreed and are equitably and contractually estopped from denying that their failure to immediately deposit collateral as demanded by USFIC shall cause irreparable harm to USFIC for which USFIC has no adequate remedy at law.

51.     As further reflected in Paragraph 7 of the Indemnity Agreement, by executing the Indemnity Agreement, the Defendants agreed and are equitably and contractually estopped from denying that USFIC is entitled to injunctive relief for specific performance of their obligation to deposit collateral security.

52.     Without admitting liability under the Bonds or otherwise, USFIC currently deems the amount of $300,000 sufficient, at the present time, to hold it harmless from and against actual and potential Loss in relation to the Bonds but, given (a) the Principal's deteriorated financial condition and (b) the fluidity of USFIC's potential exposure to Loss under the Bonds, USFIC expressly reserves the right to modify its demand for collateral security.

53. Despite demand, the Defendants have failed to collateralize USFIC, in material breach of Paragraph 7 of the Indemnity Agreement.

54. The Defendants' breach of Paragraph 7 of the Indemnity Agreement has immediately and irreparably harmed USFIC.

55. USFIC does not possess an adequate remedy at law in relation to the Defendants' breach of Paragraph 7 of the Indemnity Agreement.

56. USFIC is therefore entitled to, among other things, the entry of a preliminary injunction and/or judgment compelling specific performance of the Defendants' obligation to deposit a sum of money as collateral security with USFIC in the amount of $300,000, which is the amount that USFIC has deemed necessary, at the present time, to protect itself from actual and potential Loss, provided that USFIC expressly reserves the right to modify its demand for collateral security.

## ADDITIONAL CLAIMS

57. The issues and actions discussed above are ongoing and additional claims or amendments of the claims asserted herein may be necessary. USFIC reserves all rights and claims and the right to amend its pleadings as additional facts are discovered and/or arise and to conform to the proof developed in this case.

WHEREFORE, PREMISES CONSIDERED, United States Fire Insurance Company prays for the following relief:

a) For the issuance of process requiring each of the Defendants to answer USFIC's Complaint;

b) For the entry of judgment against the Defendants, jointly and severally, in an amount sufficient to fully exonerate, reimburse, indemnify, keep indemnified, hold harmless and collateralize USFIC from and against any and all Loss, which amount will be proven at trial;

c)  For the entry of a preliminary injunction and/or judgment compelling the Defendants to deposit a sum of money as collateral security with USFIC in the amount of $300,000 (though USFIC expressly reserves the right to modify its demand for collateral based on its potential exposure to Loss under the Bonds); and

d)  For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

**MANIER & HEROD,**
a Tennessee Professional Corporation

 */s/ Melissa Jane Lee*
Melissa Jane Lee (BPR No. 029228)
S. Marc Buchman (AR Bar No. 2020215)
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Phone: (615) 244-0030
Fax: (615) 242-4203
mlee@manierherod.com
mbuchman@manierherod.com

*Attorneys for United States Fire Insurance Company*